### GAS AND OIL.

Circuit Court of Wood County.

AERIE E. STAHL v. GEORGE H. VAN VLECK.

Decided, October 29, 1892.

*Designation of Premises to be Operated for Oil—Lease not Invalidated by the Plugging Up of the Test Well—Where the Existence of Oil had been Ascertained within the Period Prescribed by the Lease.*

1. Where the owner of three adjoining forty acre tracts of land leases one acre thereof—to be designated by himself—and agrees that, if oil or gas be found under the lease or on lands adjoining the same premises of which the designated acre is a part, the lessee shall have the right to operate forty acres of the balance of such premises for oil or gas on the terms before stated, the forty acre tract out of which the first acre was designated constitutes the forty acres to be drilled under the contract.

2. The provision of a gas and oil lease requiring the lessees "to commence a test oil or gas well" within ninety days, is sufficiently complied with where a test well was begun and completed at the designated place within ninety days and the existence of oil ascertained, notwithstanding the well was immediately plugged and the casing withdrawn and there were no further operations on the lease for several months.

*C. A. Houston* and *Dodge & Canary*, for plaintiff.
*Cook & Troup*, contra.

PER CURIAM.
SCRIBNER, BENTLEY and HAYNES, JJ:

In this case the plaintiff seeks relief in the alternative.  He claims that a certain gas and oil lease which he executed on

---

* Affirmed by the Supreme Court, *Stahl* v. *Van Vleck*, 53 Ohio St., 136.

December 15, 1886, to Manahan & Detwiler has by its own terms ceased and determined, the assignee, Van Vleck, as it is claimed not having performed the terms and stipulations to be performed on the part of the grantee in this lease, and he also claims that in the drafting of the lease an error occurred which should be corrected.

Mr. Stahl was the owner of the land upon which this lease was given, situate in Wood county, and entered into the contract with Manahan & Detwiler on the date named, viz., December 15, 1886. By the terms of the lease it was stipulated and agreed that the lessees or their assigns should commence a test well within ninety days at Rising Sun or near thereto, and in the event of failure to commence a test well within the period stipulated, the lease should be null and void. This instrument is nearly, if not precisely, identical with leases that we have heretofore passed upon in this court. The lessee, however, as the testimony shows, did commence and sink a well at Rising Sun. The testimony introduced in his behalf shows that about the 17th of February they commenced the work of procuring timber and erecting a derrick at the place named—Rising Sun. It is not disputed by the plaintiff that so much of the work was done. It is shown, also on the part of the defendant, that the lessees did commence the operation of drilling a well upon the lands which they had leased near Rising Sun. The testimony of the defendants tends to show that that work was commenced within the three months limited.

The testimony on the part of the plaintiff tends to show that the drilling did not actually commence until about March 17, 1887, which would be a day or two subsequent to the expiration of the ninety days provided for in the lease for the sinking of the test well. We are led to the conclusion, however, upon a careful review of all the testimony, that the lessees did in fact enter upon the performance of drilling a well at Rising Sun within the period provided for in the lease, and we think procured the timber necessary for the work of drilling, and erected the derrick within ninety days within a fair meaning of this contract as to the commencement of the drilling within that period of time; and really, we are of the opinion that upon the testimony the work of actually drilling had commenced before

the expiration, but upon that there is some conflict of testimony; but however that may be, in our view of the construction to be given the terms of the contract, we do find that the work of drilling a well at Rising Sun was commenced by the lessees within the period of ninety days after the execution of this lease. We also think that, while there was no obligatory undertaking on the part of the lessees to do anything, yet inasmuch as they did voluntarily proceed to perform stipulation under that contract, expended their money and performed labor, that the defense that there was a *nudum-pactum,* can not well apply.

Now the well that was sunk did disclose the existence of oil in that territory—not to any great extent—and the well was closed and remained closed for a considerable period of time; but nothing was done on the part of the lessor, the plaintiff, to terminate this contract. Conditions run on about as they were after the sinking of the well until about the month of August, 1891, this suit having been commenced on November 28, 1891, at which time, the defendant, Van Vleck, having become the owner of the lease, took steps looking to the drilling of a well upon these lands, and an interview was had by Van Vleck, or his employes, with the plaintiff in regard to that, and as to the place where the well should be sunk, and thereupon a difference arose between them; the defendant claiming that he had a right to drill anywhere on the property described in the lease, and the plaintiff claiming that he had only the right to drill on forty acres to be named by him—part of the 120 acres described in the lease. The plaintiff himself testifies and witnesses on his behalf testified that he expressed to the defendants that they should drill, provided they should limit their operations to a certain forty acres which he designated, a certain forty in the northwest corner of the tract, on which they should operate. The defendants understanding that they had a right to drill anywhere on the tract, nevertheless proceeded to haul their material and tools to the northwest corner, being the corner designated by Mr. Stahl for the drilling of the first well; but the result of the controversy between them was that the plaintiff insisted that they should relinquish their right to drill on the entire 120 acres, and they insisted that the lease embraced the entire 120 acres, and they being

about to proceed to drill on the northwest corner, the plaintiff commenced this action to prevent them from proceeding, and to have a reformation of this contract.

Pending this suit there was an amicable talk between the parties, and in a conversation had after the suit was commenced, Mr. Stahl indicated to them that he preferred that they should drill on the southwest rather than the northwest corner as indicated by him. The contract reads:

"That the said first party for the consideration hereinafter named and agreed upon does hereby grant to said second parties or their successors and assigns the right to enter upon the following lands and premises now owned by said first party, and situate in Perry township, Wood county, Ohio, to-wit: A tract to be designated by first party of one acre on the following described premises: the south half of the northwest quarter of section two, in town three, north of range twelve, east, also the northeast quarter of the southwest quarter of said section, township, and range aforesaid, containing forty acres of the within described premises; for the purpose and with the exclusive right in and upon said premises to drill and develop oil, gas and other valuable substances, and the exclusive right-of-way to said second parties or their successors and assigns to convey over, upon and through said premises, any and all oil, gas and other valuable substances."

Then come written stipulations as to the compensation, etc., and further on down is this:

"It is further agreed on the part of the party of the first part that if oil or gas be obtained by the second party or assigns in and under the provision of this contract upon said tract or on the lands adjoining the same premises of which the foregoing one acre described embraces a part, said second party shall have the right to operate the balance of said premises on the same terms as above."

It is contended on the part of the plaintiff that when this contract was entered into it was agreed that it should be limited to forty acres of these premises; this was denied on the part of the defendant company, or the defendants, and one of the principal matters of contention relates to this controversy as to what the terms of the grant were originally. The plaintiff, it seems, was

furnished with a copy of the contract when it was entered into; he can not produce that copy and we do not know what its terms are; but the original, as produced on the trial by the defendant under the compulsory process of this court, shows that there was originally written in this agreement in another line the words "forty acres" and the word "balance" is stricken out so that it will read "of which the foregoing one acre described embraces a part; said second party shall have the right to operate forty acres of said premises on the same terms as above."

The testimony of the plaintiff is clear and to the point that the agreement was made as this agreement shows it to have been reduced to writing, and also that it was agreed that he should designate the forty acres, and the one acre of that forty acres on which the first well was to be sunk, and the then agent of the lessee testified that that was the agreement between them and he states that this interlineation is his handwriting and was so written at the time the lease was entered into.

Now without consuming further time, I will say that our conclusion is this, that the lease was made as claimed by the plaintiff. One acre was to be designated by him in the forty to be designated, on which the first well should be sunk; he, it was, who by the agreement should point out where the well should be sunk. Then upon the condition provided for in the lease, the lessee was to have the right to operate upon the forty acres so designated by the plaintiff. Shortly before the commencement of this suit, he had designated to the lessee the forty acres upon which he wished him to operate. He was at that time willing, entirely willing they should go on, provided they consented to the reformation of the lease. The lease, as it was recorded, fails to show this correction as made by pencil interlineation on the lease.

The defendant, the lessee, while insisting that the right to operate upon the whole 120 acres immediately, in case oil or gas should be found, was conferred by the lease, nevertheless was taking steps to drill upon the forty in the northwest corner designated by the plaintiff, and hauled material in good faith and was about to proceed with the work. Plaintiff then brought this suit and afterwards told the defendants he preferred they should work in the southeast rather than the northwest corner of the

tract. This indicated his willingness that they should operate upon the lease, but he insisted that they were not upon the correct quarter which I have referred to. The defendant still claimed the right to operate upon the whole tract, and was enjoined by this action from proceeding.

We think the plaintiff should have a decree so as to limit the right of the defendant to operate as claimed by this paper here as written in pencil, yet inasmuch as money has been expended in that work, and inasmuch as plaintiff has signified that he was willing to have them go on and operate according to the terms of the lease as it was actually entered into, and inasmuch as they have gone on and taken additional steps towards prosecuting the work, they are entitled to that forty acres, and the decree should be so shaped that their right is limited to the forty acres contained in the northwest corner of the tract pointed out by the plaintiff; and in view of the fact that the defendants, although understanding that the lease, by its terms, covered the whole tract, nevertheless were proceeding upon the forty acres, we are of the opinion that the costs of this suit should be divided between the parties.